Argued 27 November, 1900; decided 7 January, 1901.

## SAUERS *v*. BEECHLER.

[63 Pac. 195.]

FRAUDULENT CONVEYANCE — BADGES OF FRAUD.

The fact that a vendor is in debt and anxious to sell his property does not affect his right to dispose of it if he obtains a fair price and the transfer is made in good faith.

From Multnomah: LOYAL B. STEARNS, Judge.

Suit by William M. Sauers against James Beechler and others.   From a decree for plaintiff, defendants appeal.

REVERSED.

For appellants there was a brief over the names of *Lionel R. Webster* and *A. Evan Reames,* with an oral argument by *Mr. Webster.*

For respondent there was a brief and an oral argument by *Mr. Dell Stuart.*

MR. CHIEF JUSTICE BEAN delivered the opinion.

This is a suit in the nature of a creditors' bill to set aside the sale and conveyance by the defendants Beechler to their co-defendants, Ingalls, of certain real estate and a stock of drugs and druggist's fixtures in the City of Sellwood, and to subject such property to the payment of a judgment recovered by the plaintiff against the Beechlers. One or two propositions of law were discussed at the argument that it will not be necessary to consider, as the facts, in our opinion, are insufficient to support the decree. In brief, it appears that in 1894 the defendant G. W. Ingalls and Eliza Ingalls, his wife, who then resided in Arizona, and were the owners there of a possessory title to, and a prior right to purchase, 160 acres of school land, of the probable value of $2,000 or $3,000, and a water right appurtenant thereto, valued at $1,200, learned through a friend in Portland that the defendant James Beechler and Jennie Beechler, his wife, were the owners of two lots and a drug store in Sellwood, which they desired to exchange for Arizona property. The Ingallses thereupon opened a correspondence with the Beechlers, with a view of exchanging their property in Arizona for that of the Beechlers in Sellwood, as a result of which Mr. Ingalls came to Portland in July, 1894, to consummate the trade, if satisfactory terms could be agreed upon. The plaintiff, Sauers, is the son-in-law of the Beechlers, and for some time prior to the arrival of Mr. Ingalls in Oregon had been a bookkeeper and clerk in the drug store, and had invested therein, in the name of his wife, either as a partner or as a loan to the Beechlers, about $1,000 in money. When Mr. Ingalls arrived in Portland, he met the Beechlers and Mr. and Mrs. Sauers by appointment, and, after learning that Mrs. Sauers had or claimed some interest in the drug store, refused to trade with the Beechlers until her claim should be adjusted and relinquished. After some controversy between

the Beechlers and plaintiff, a conference was arranged for July 12 with Mrs. Sauers, in whose name the claim stood on the books, and who was the ostensible owner thereof, at which, after considerable negotiation, they finally agreed upon terms of settlement, by which the Beechlers were to give Mrs. Sauers two promissory notes, covering the interest owned by her in the drug store, and she and her husband were to execute and deliver to them an assignment or relinquishment of all and any interest they might have in the business. Mr. Ingalls was present at the time, and talked the matter over privately with Mrs. Sauers, after the terms of the settlement had been agreed upon, and was assured by her that she fully understood what she was doing, and was satisfied with the settlement. The two promissory notes were thereupon executed by the Beechlers, and delivered to Mrs. Sauers, who executed a release of her interest in the business; but when she returned home, and submitted the notes and agreement to her husband, he refused to abide by the settlement, or to sign the relinquishment, and immediately returned the notes to the Beechlers, and started for Portland, for the purpose, as he then declared to them and Ingalls, of commencing an action, and attaching the property which they were about to exchange. The transfer by the Beechlers to the Ingallses was consummated, however, and the possession of the property delivered on the twelfth, and the Ingallses transferred and conveyed to them all their right, title, and interest in and to their real estate in Arizona and the improvements thereon. The water right, however, was then in pledge for a loan of $300, and was not transferred at the time; and never has been, as we understand the testimony. On the next day the plaintiff began an action in his own name against the Beechlers to recover $1,000, alleged to have been loaned by him to them between the fifth day of May, 1890, and the twentieth day of July, 1892, and caused a writ of attachment to be issued, by virtue of which the sheriff at-

tached the real property previously conveyed by the Beechlers to the Ingallses, and the drug store, then in the possession of Mr. Ingalls.   Such proceedings were subsequently had in the action that the plaintiff recovered judgment against the Beechlers for $1,183.   This suit was afterwards begun to set aside the sale of the real estate and the drug store on the ground that it was made for the purpose of defrauding the plaintiff, and from a decree in his favor the defendants Ingalls appeal.

At the time of the exchange of property the real estate conveyed by the Beechlers to the Ingallses was subject to a mortgage, given to secure the payment of about $1,000, which has since been foreclosed, so that the stock of drugs and store fixtures, worth probably $500, is all that is really now involved in this suit.   We have examined the record in vain to find testimony sufficient to support the decree setting aside the transfer and conveyance on the ground that it was made for the purpose of defrauding creditors.   Without entering into details, it is sufficient to say that we are impressed with the view that it was a _bona fide_ exchange and transfer, and such a one as the Beechlers could lawfully make and the Ingallses lawfully accept.   It is true, the testimony shows that at the time the transfer was made the plaintiff had some kind of a claim against the Beechlers, either as a partner or as an ordinary creditor, the exact nature of which is not made clear by the evidence.   He put his right to relief, however, in the law action, as well as in this suit, upon the ground that he was an ordinary creditor, and not a partner; and as he can only recover, if at all, upon that theory, we shall consider the case as he has made it.   At the time of the transfer the Beechlers owed a wholesale drug firm in Portland about $200, which the defendant Ingalls assumed, and has since paid.   With this exception, it appears that their only indebtedness was to the plaintiff; and the fact that they were so indebted did not deprive them of dominion over their property,

or the right to sell or dispose of it, so long as they acted in good faith. Nor is the fact that they were anxious to consummate the exchange, and to have the necessary deeds and papers executed and delivered, before plaintiff could commence his threatened action, and seize the property under attachment, sufficient of itself to impeach the transaction: Bump, Fraud. Conv. (2 ed.), 36, 37. Both of these matters are badges of fraud, notwithstanding which the transfer may be shown to be valid, and to have been made in good faith. It is argued that no consideration was paid by Ingalls for the property. But the evidence shows that the Arizona property, which they gave in exchange, was valued at about $2,000, and was soon afterwards sold by the Beechlers at public auction for $1,600; and there is no testimony to indicate that the Sellwood property they received in exchange was of any greater value. Indeed, the real estate was covered at the time by the mortgage which subsequently absorbed it, and the stock of drugs and the good will of the business were worth not to exceed $1,000 or $1,500; so it seems that an adequate and full consideration was paid by the Ingallses for the property received by them. It follows that the decree of the court below must be reversed, and it is so ordered.

REVERSED.